Harold D. **FOLAND**, Plaintiff,

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY**, Defendant.

No. W–2168.

United States District Court
D. Kansas.
June 22, 1962.

Speir, Stroberg & Sizemore, Newton, Kan., for plaintiff.

Lilleston, Spradling, Gott, Stallwitz & Hope, Wichita, Kan., for defendant.

STANLEY, Chief Judge.

This is an action to recover damages for personal injury allegedly inflicted on August 12, 1959, while plaintiff was trying to lift his automobile bumper which had become hooked over a fire plug situated in defendant's parking lot. The jurisdiction of this court rests upon diversity of citizenship. The defendant railroad has moved for summary judgment on the ground that plaintiff relieved defendant of liability by an agreement dated February 7, 1956. Paragraph X of the pretrial order contains the stipulation that the law of Oklahoma controls the validity of the agreement.

At the time of the accident and prior thereto, plaintiff was employed by Ford Grain Door Company, hereinafter called the Door Company, as a service representative whose job it was to instruct and assist customers in the use of equipment. The 1956 agreement was between plaintiff and the Door Company on the one hand, and the defendant railroad on the other. According to the "recitals," the purpose of the agreement was to provide defendant with the gratis services of plaintiff, the defendant being a customer of the Door Company. In return, defendant granted plaintiff a permit to travel on defendant's trains in connection with the services.

Paragraph 3 of the agreement is as follows:

"* * * [the Door Company and plaintiff] jointly and severally, hereby assume all risk of personnal injury to or death of * * * [plaintiff] while travelling on transportation furnished by * * * [defendant] hereunder or while upon, about or adjacent to any engines, trains, cars, right of way or other premises of * * * [defendant] hereunder, as well as loss or destruction of or damage to property belonging to, or in the possession of * * * [plaintiff], whether any such injury, death, loss, destruction or damage be caused or contributed to by negligence of * * * [defendant], its agents, servants or employes or otherwise * * *."

Plaintiff resists the motion on the theory that defendant entered into

the agreement in its capacity of a common carrier and that therefore it is void as against public policy. At common law, the general rule is that one may contract for relief from liability for negligence except where prohibited by public policy. See Santa Fe, P. & P. Ry. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1913). At common law, public policy forbade immunity from liability for negligence in the prosecution of common carrier business, (1) because such transportation is an essential public service requiring utmost care, and (2) because of the unequal bargaining power between the individual shipper and the common carrier. Santa Fe, P. & P. Ry. v. Grant Bros. Const. Co., supra, at 184, 185, 33 S.Ct. 474.

A railroad acts in its common carrier capacity, for example, when contracting with a drover who accompanies stock being transported, New York Cent. R. R. v. Lockwood, 84 U.S. 357, 17 Wall. 357, 21 L.Ed. 627 (1873), but acts in its private capacity when contracting with an express company whose employees accompany merchandise being transported. Baltimore & O. S. W. Ry. v. Voigt, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560 (1900).

█ In the present case, the defendant railroad was not required, by its duty to serve the public, to grant plaintiff a permit to use its facilities. The fact that plaintiff's services incidentally aided defendant in executing its business as a common carrier does not necessarily make the contract one for the performance of a common carrier duty. Santa Fe, P. & P. Ry. v. Grant Bros. Const. Co., supra, 228 U.S. at 185, 33 S.Ct. 474.

█ It is not clear whether inequality of bargaining power is pertinent where a railroad contracts in its private capacity. Even if it is pertinent, the present case finds the plaintiff allied with his employer in the contract, much as was the express agent in the Voigt case, and unlike the drover in the Lockwood case.

█ Plaintiff next claims that the common law rule permitting immunity

from liability by contract does not apply where the Oklahoma Constitution or laws protect the particular cause of action or prohibit the act causing the injury. In Missouri, K. & T. Ry. v. West, 38 Okl. 581, 134 P. 655 (1913), appeal dismissed, 232 U.S. 682, 34 S.Ct. 471, 58 L.Ed. 795 (1914), a suit for wrongful death was held not barred by the deceased's contract to assume all risk. The court said that Article 23, § 8 of the Oklahoma Constitution nullifies a contract which purports to waive any benefit of the Constitution. Article 23, § 7 provides that "the right of action to recover damages for injuries resulting in death shall never be abrogated * * *." The present plaintiff, however, cites no constitutional provision which can be said to protect him against his contract with defendant.

In Pine Belt Lumber Co. v. Riggs, 80 Okl. 28, 193 P. 990 (1920), a suit for personal injury was held not barred by waiver of liability in a contract. The court based its holding upon the protection afforded against such contracts by an Oklahoma statute, R.L. 1910 § 3776, making employers liable for injury caused by defective machinery.

The development of an Oklahoma rule to the effect that statutory rights cannot be waived by contract seems thwarted by Sunlight Carbon Co. v. St. Louis & S. F. R. R., 15 F.2d 802 (8th Cir. 1926). The circuit court said that although no authority had been cited, it perceived "no reason why a railroad company may not, when acting in its private capacity, relieve itself from an absolute liability imposed by statute as well as from liability resulting from negligence." The case concerned a prairie fire statute. Sunlight was cited in upholding a lease clause exempting a lessor from liability in Clifton v. Charles E. Bainbridge Co., 297 P.2d 398 (Okl.1956). The lessee had contended that the clause violated Title 15 § 212 of the Oklahoma statutes, which declares certain contracts to be against public policy.

I feel it unnecessary to attempt reconciliation of the earlier Riggs case with

the later Sunlight and Clifton cases. The only statutes cited by the plaintiff in this action are ones outlining and defining degrees of care and negligence recognized in Oklahoma. These offer no protection similar to the defective machinery or prairie fire laws involved in the foregoing cases. The same be said of the case of Hunter v. American Rentals, 189 Kan. 615, 371 P.2d 131, in which it was held that a contract exonerating a party from liability for negligence was void as against public policy where the negligence consisted of the violation of a statute involving the public interest.

Lastly, plaintiff claims that even though the contract be valid it is inapplicable to the facts of this case. Paragraph 3 of the agreement makes it applicable while plaintiff is travelling on defendant's trains or while plaintiff is "upon, about or adjacent to any engine, trains, cars, right of way or other premises" of defendant.

The rule of *ejusdem generis* is invoked by plaintiff as excluding the parking lot from the general words, "other premises." Plaintiff says the preceding specific words confine "other premises" to those which are not open to the general public.

■ The agreement, of course, is not a blanket exemption from liability. From a reading of the whole, I conclude that it applies while plaintiff is travelling, etc., for the purpose of rendering services to defendant and its shippers in connection with the use of the Door Company's equipment. A reasonable interpretation of the agreement leads me to believe that its spirit and purpose was to relieve the railroad from liability to the plaintiff during all such times as the plaintiff was engaged in the work mentioned in the agreement. The plain language used would include all premises under the defendant's control. On page 6 of plaintiff's deposition, he explains why he was in the defendant's parking lot at Sapulpa, Oklahoma, on the day of his alleged injury:

"There had been built some grain storage at Sapulpa which was fairly new, the construction was fairly new, and I was there in regard to seeing about whether the shipper would need a demonstration on our product and also whether or not they had a supply of our doors at the town."

The motion for summary judgment will be granted.

Counsel will submit an appropriate order.